# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| TRB Mellichamp LLC, ) | |
| ) | |
| Plaintiff/Counterclaim Defendant, ) | Civil Action No.: 2:20-4413-RMG |
| ) | |
| v. ) | |
| ) | **ORDER AND OPINION** |
| Concrete Supply Co., LLC, ) | |
| ) | |
| Defendant/Counterclaimant. ) | |
| _____ ) | |

Before the Court is Plaintiff's motion to dismiss Defendant's amended counterclaim. (Dkt. No. 25). For the reasons set forth below, the motion is granted.

**I.     Background**

This is a diversity jurisdiction breach of contract case arising from a purchase agreement for real property in Dorchester County, South Carolina. Plaintiff is an affiliate of non-party Banks Construction Company ("Banks"), which is a highway contractor. Plaintiff alleges that Banks and Defendant Concrete Supply Co., LLC ("Concrete") own adjacent properties. On March 18, 2019, Banks and Concrete entered into a purchase sale agreement ("PSA") under which Concrete agreed to sell Banks a portion of its property and retain the residual portion. The PSA provided that Banks would construct a connecting road (the "Connecting Road") to the residual portion, to run over an adjacent property that Banks leases from Norfolk Southern. Banks would negotiate with Norfolk Southern, as part of its lease, for Concrete to also access the Connecting Road. On June 18, 2019, Banks, Concrete and Plaintiff executed an amendment to the PSA, which assigned all of Banks's

rights under it to Plaintiff. The amendment further provided that Banks/Plaintiff had obtained the road construction permits and agreed to a sublease for Concrete's access of the road.

Banks constructed the Connecting Road, and Plaintiff alleges that it fulfilled its obligations under the amended PSA; however, Concrete failed to subdivide its property into the sold and residual portions. Non-party Dorchester County then stated it would approve Concrete to subdivide if Concrete would promise not to access the residual portion through an adjacent residential neighborhood. Concrete allegedly unjustifiably refuses to agree to that. As a result of these alleged breaches by Concrete of the amended PSA, closing and purchase of the sale portion of the property has not occurred despite Plaintiff being ready and able to pay the purchase price balance. Plaintiff brings one cause of action against Concrete: breach of contract with a request for expedited specific performance. (Dkt. Nos. 1, 1-1, 1-2).

In response, Concrete first brought one counterclaim for breach of the implied covenant of good faith and fair dealing. (Dkt. No. 7).

On March 5, 2021, the Court dismissed Concrete's counterclaim, but granted Concrete leave to amend its answer. (Dkt. No. 18).

On March 22, 2021, Concrete filed an amended answer. Concrete now brings a counterclaim for breach of contract. (Dkt. No. 24).

Concrete alleges that Banks has long hoped to expand into Concrete's property, and that Banks was aware that without the Connecting Road Concrete would have no access to its property. Concrete further alleges that Banks knew it worked diligently to subdivide the property, and that Banks/Plaintiff were actually Concrete's primary point of contact to obtain Dorchester County's approval of the subdivision. When Dorchester County announced the prohibition on access via the

2

residential neighborhood, Concrete alleges it and Banks/Plaintiff began "exploring alternative structures for the transactions, all of which would have been more favorable to Banks/TRB than the terms of the PSA." Banks/Plaintiff allegedly never contended that Concrete was delaying or defaulting on its obligations under the PSA. Instead, when Concrete "notified Banks/TRB that [it] was prepared to sign an agreement with Dorchester County," the following day Banks/Plaintiff closed and locked a gate extending across the Connecting Road, which took away Concrete's only way to access the property. Concrete alleges that Banks/Plaintiff intended to prohibit Concrete from completing construction on its property and then declared Concrete in default of the PSA for failing to subdivide the property merely to leverage Concrete into more favorable terms. Concrete alleges that, because of this conduct, it has incurred damages and lost revenue including from being denied access to its property via the Connecting Road. (Dkt. No. 24).

Plaintiff moves to dismiss Concrete's amended counterclaim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 25). Concrete opposes. (Dkt. No. 29). Plaintiff filed a reply. (Dkt. No. 32).

Plaintiff's motion is fully briefed and ripe for disposition.

**II.    Legal Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted." A tort claim survives the motion if the complaint provides enough facts to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This is a test of the legal sufficiency of the complaint and, therefore, Rule 12(b)(6) "does not resolve contests surrounding the facts, the merits of the claim, or the

applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Instead, the district court's "inquiry then is limited to whether the allegations constitute a short and plain statement of the claim showing that the pleader is entitled to relief." *Id*. (internal quotation marks and citation omitted). For that analysis, the district court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments"; however, it must "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

### III.  Discussion

"'[T]here exists in every contract an implied covenant of good faith and fair dealing.'" *Osborn v. U. Med. Assocs of Med. Univ. of South Carolina*, 728 F. Supp. 2d 270, 741 (D.S.C. 2003) (quoting *Williams v. Riedman*, 529 S.E.2d 28, 35 (S.C. Ct. App. 2000)). Which is why, in South Carolina, "the implied covenant of good faith and fair dealing is not an independent cause of action separate from the claim for breach of contract." *RoTec Servs., Inc. v. Encompass Servs, Inc.*, 597 S.E.2d 881, 884 (S.C. Ct. App. 2004) (affirming trial court's dismissal on summary judgment of counterclaims for breach of contract and breach of implied covenant of good faith and fair dealing). "Rather, it is subsumed under the claim for breach of contract." *In & Out Welders, Inc. v. Sunbelt Rentals, Inc.*, No. 7:16-cv-4021-MGL, 2017 WL 2255780, at *3 (D.S.C. May 23, 2017). In other words, the implied covenant of good faith and fair dealing is "another term of the contract." *Ro Tec Servs., Inc.*, 597 S.E.2d at 884.

Under South Carolina law, a claimant pleading breach of the implied covenant of good faith and fair dealing must show (1) the parties had a contractual relationship and (2) the

[counterclaim] defendant breached that implied covenant. *See Phillips v. Wells Fargo Bank, N.A.*, No. 3:17-0519-JAG, 2018 WL 659199, at *3 (E.D. Va. Feb. 1, 2018); *see also Agape Senior Primary Care, Inc. v. Evanston Ins. Co.*, 304 F. Supp. 3d 492, 497 (D.S.C. 2018) (noting that under South Carolina law, a plaintiff claiming breach of contract "must establish three elements: (1) a binding contract entered in to by the parties; (2) breach or unjustifiable failure to perform the contract; and (3) damage as a direct and proximate result of the breach"). The implied covenant is that "neither party will do anything to impair the right of the other to receive the benefits of the agreement." *Episcopal Church in South Carolina v. Church Ins. Co. of Vermont*, 993 F. Supp. 2d 581, 593 (D.S.C. 2014). "[T]here is no breach of an implied covenant of good faith where a party to a contract has done what the provisions of the contract expressly gave him the right to do." *Adams v. G.J. Creel and Sons, Inc.*, 465 S.E.2d 84, 85 (S.C. 1995). Likewise, there is ordinarily no breach of the implied covenant of fair dealing by conduct that is permitted by law. *See, e.g.*, *Calcaterra v. City of Columbia*, 432 S.E.2d 498, 500 (S.C. Ct. App. 1993).

Here, Concrete's counterclaim is labeled as one for breach of contract. Concrete then alleges only that Plaintiff "breached the covenant of good faith and fair dealing . . . by: (1) closing the gate without notice . . . and (2) declaring [Concrete] in default for the first time after the parties had worked together for months to subdivide CSC's Property." (Dkt. No. 24 ¶ 40). Concrete alleges that "[n]either the PSA nor the Amendment expressly gave TRB the right" to close the gate or declare Concrete in default for failing to subdivide the property. (*Id.* ¶ 41).

The Court grants Plaintiff's motion to dismiss Concrete's amended counterclaim. Courts applying South Carolina law regularly dismiss a breach of implied covenant claim where there is no breach of contract claim into which it can be subsumed. Here, while Concrete now alleges that

"[n]either the PSA nor the Amendment expressly gave [Plaintiff] the right to" close the gate to the Connecting Road or declare Concrete in default, (Dkt. No. 23 ¶ 41), the substance of Concrete's factual allegations cannot be understood to make out a breach of contract counterclaim—the allegations specifically state that the injury resulted from Plaintiff's "misconduct" and "bad faith conduct" and not a breach of any provision of the PSA or Amendment, (*id.*¶ 35). *See, e.g.*, *In & Out Welders, Inc.*, 2017 WL 2255780, at *3 (denying Rule 12(b)(6) motion to dismiss breach of implied covenant claim, only with the clarification that the claim is another ground for the already-pled breach of contract claim rather than a separate cause of action); *In re TD Bank, N.A.*, 150 F. Supp. 3d 593, 625 (D.S.C. 2015) (finding the plaintiff plausibly alleged a breach of the covenant of good faith, noting that "even if TD Bank complied with the literal terms of the contract (an assumption that the plaintiffs dispute), the plaintiffs still state a plausible claim that the *manner* in which the overdraft policy was imposed was abusive, or that the Bank's actions violated the implied covenant where they were in *excess* of the *express terms* to the plaintiffs detriment") (emphasis added); *Davis v. Dunn*, No. 2021-UP-045, 2021 WL 487361, at *3 (S.C. Ct. App. Feb. 10, 2021) ("Without a breach, [a party] cannot maintain claims for breach of contract . . . or breach of the implied covenants of good faith and fair dealing as a matter of law."); *King v. Carolina First Bank*, 26 F. Supp. 3d 510, 518 (D.S.C. 2014) (denying Rule 12(b)(6) motion to dismiss where plaintiff sufficiency pled "a breach of contract and/or the implied covenant of good faith and fair dealing claim"); *see also Turnage v. JP Morgan Chase Bank*, No. 2:11-2916-RMG, 2012 WL 12354226, at *4 (D.S.C. Apr. 13, 2012) (granting Rule 12(b)(6) motion to dismiss claim for breach of implied covenant where breach of contract claim survived); *Regions Bank v. College Ave. Development, LLC*, No. 8:09-cv-1095-RBH, 2010 WL 973480, at *3 (D.S.C. Mar. 10, 2010)

(granting Rule 56 motion for summary judgment to dismiss claim for breach of implied covenant where claim for breach of contract survived). Accordingly, Concrete's counterclaim for breach of contract cannot stand. *See Crenshaw v. Erskine Coll.*, 432 S.C. 1, 24–25, 850 S.E.2d 1, 13 (2020), *reh'g denied* (Nov. 30, 2020) ("The court's duty is to enforce the contract made by the parties regardless of its wisdom or folly. No jury—nor any judge—is permitted by law to rewrite a contract to impose liability based on some vague personal sense of what is fair.") (internal citations and quotation marks omitted); *Greene v. Life Care Ctrs. Of Am., Inc.*, No. 2:07-cv-1648, 2008 WL 5378259, at *4 (D.S.C. Dec. 23, 2008) ("[T]here is no breach of the implied covenant of good faith by conduct which is authorized under the law."); *Calcaterra v*, 432 S.E.2d at 500 (holding that the defendant was not liable for breach of the implied covenant of good faith and fair dealing for its failure to do something it had no duty to do).

### IV.     Conclusion

For the foregoing reasons, Plaintiff's motion to dismiss Concrete's amended counterclaim for breach of contract (Dkt. No. 25) is **GRANTED**.

    **AND IT IS SO ORDERED.**

                                s/ Richard Mark Gergel

June 11, 2021                           United States District Judge
Charleston, South Carolina