# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| TRB Mellichamp LLC, | ) |
|     Plaintiff, | ) Civil Action No.: 2:20-4413-RMG |
| v. | ) **ORDER AND OPINION** |
| Concrete Supply Co., LLC, | ) |
|     Defendant. | ) |

Before the Court is Plaintiff's motion for judgment on the pleadings (Dkt. No. 36). For the reasons set forth below, the motion is denied.

## I. Background

This is a diversity jurisdiction breach of contract case arising from a purchase agreement for real property in Dorchester County, South Carolina. Plaintiff is an affiliate of non-party Banks Construction Company ("Banks"), which is a highway contractor. Plaintiff alleges that Banks and Defendant Concrete Supply Co., LLC ("Concrete") own adjacent properties. On March 18, 2019, Banks and Concrete entered into a purchase sale agreement ("PSA") under which Concrete agreed to sell Banks a portion of its property and retain the residual portion. The PSA provided that Banks would construct a connecting road (the "Connecting Road") to the residual portion, to run over an adjacent property that Banks leases from Norfolk Southern. Banks would negotiate with Norfolk Southern, as part of its lease, for Concrete to also access the Connecting Road. On June 18, 2019, Banks, Concrete and Plaintiff executed an amendment to the PSA, which assigned all of Banks's

rights under it to Plaintiff.  The amendment further provided that Banks/Plaintiff had obtained the road construction permits and agreed to a sublease for Concrete's access of the road.

Banks constructed the Connecting Road, and Plaintiff alleges that it fulfilled its obligations under the amended PSA; however, Concrete failed to subdivide its property into the sold and residual portions.  Non-party Dorchester County then stated it would approve Concrete to subdivide if Concrete would promise not to access the residual portion through an adjacent residential neighborhood.  Concrete allegedly unjustifiably refuses to agree to that.  As a result of these alleged breaches by Concrete of the amended PSA, closing and purchase of the sale portion of the property has not occurred despite Plaintiff being ready and able to pay the purchase price balance. Plaintiff brings one cause of action against Concrete: breach of contract with a request for expedited specific performance. (Dkt. Nos. 1, 1-1, 1-2).

On March 22, 2021, Concrete filed its amended answer, affirmative defenses, and counterclaim (the "Amended Answer"). (Dkt. No. 24).

Concrete alleges that Banks has long hoped to expand into Concrete's property, and that Banks was aware that without the Connecting Road Concrete would have no access to its property. Concrete further alleges that Banks knew it worked diligently to subdivide the property, and that Banks/Plaintiff were actually Concrete's primary point of contact to obtain Dorchester County's approval of the subdivision. When Dorchester County announced the prohibition on access via the residential neighborhood, Concrete alleges it and Banks/Plaintiff began "exploring alternative structures for the transactions, all of which would have been more favorable to Banks/TRB than the terms of the PSA."  Banks/Plaintiff allegedly never contended that Concrete was delaying or defaulting on its obligations under the PSA.  Instead, when Concrete "notified Banks/TRB that [it]

was prepared to sign an agreement with Dorchester County," the following day Banks/Plaintiff closed and locked a gate extending across the Connecting Road, which took away Concrete's only way to access the property. Concrete alleges that Banks/Plaintiff intended to prohibit Concrete from completing construction on its property and then declared Concrete in default of the PSA for failing to subdivide the property merely to leverage Concrete into more favorable terms. Concrete alleges that, because of this conduct, it has incurred damages and lost revenue including from being denied access to its property via the Connecting Road. Concrete asserts one counterclaim for breach of contract. (Dkt. No. 24).

On April 12, 2021, Plaintiff moved to dismiss Concrete's amended counterclaim. (Dkt. No. 25). On June 11, 2021, the Court granted Plaintiff's motion and dismissed Concrete's amended counterclaim for breach of contract. (Dkt. No. 34).

Plaintiff now moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). (Dkt. No. 36). Concrete opposes. (Dkt. No. 39).

Plaintiff's motion is fully briefed and ripe for disposition.

## II.  Legal Standard

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). "The standard of review for Rule 12(c) motions is the same as that under Rule 12(b)(6)." *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014). Thus, in considering a Rule 12(c) motion, "all of the well pleaded factual allegations in the adversary's pleadings are assumed to be true and all contravening assertions in the movant's pleadings are taken to be false." 5C Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1368 (3d ed. 2011). "A motion for

judgment on the pleadings under Rule 12(c) may be granted only if all material issues can be resolved on the pleadings by the district court; otherwise, a summary judgment motion or a full trial is necessary." *Id.* "An issue of fact is deemed to be material if the outcome of the case might be altered by the resolution of the issue one way rather than another." *Id.* "Thus, the plaintiff may not secure a judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery." *Id.* "A material issue of fact that will prevent a motion under Rule 12(c) from being successful may be framed by an express conflict on a particular point between the parties' respective pleadings. It also may result from the defendant pleading new matter and affirmative defenses in his answer." *Id.* "[W]hen the plaintiff moves for judgment on the pleadings, the motion should be granted if, 'on the undenied facts alleged in the complaint and assuming as true all the material allegations of fact in the answer, the plaintiff is entitled to judgment as a matter of law.'" *Lowden v. Cty. of Clare*, 709 F. Supp. 2d 540, 546 (E.D. Mich. 2010) (quoting *United States v. Blumenthal*, 315 F.2d 351, 352 (3d Cir. 1963)).

### III.  Discussion

After careful consideration of the pleadings and the parties' respective briefings, the Court denies Plaintiff's motion for judgment on the pleadings. In its Amended Answer, Concrete pleads new facts and raises, *inter alia*, the affirmative defense of unclean hands. (Dkt. No. 24 at 5-6); *see Aaron v. Mahl*, 381 S.C. 585, 594, 674 S.E.2d 482, 487 (2009) ("The doctrine of unclean hands 'precludes a plaintiff from recovering **in equity** if he acted unfairly in a matter that is the subject of the litigation to the prejudice of the defendant.'") (citing *Ingram v. Kasey's Assocs.*, 340 S.C. 98, 107 n.2 (2000)). In opposing Plaintiff's motion, Concrete argues:

> TRB engaged in the following unfair and otherwise inequitable conduct in an attempt to leverage CSC [i.e. Concrete] into doing a deal better than what was

> called for by the PSA: (1) closing and locking the gate across Mellichamp Road on December 12, 2019, without notice and, thereby, denying CSC access to CSC's Property via Mellichamp Road; and (2) declaring CSC in default for the first time on December 20, 2019, after the parties had worked together for months to subdivide CSC's Property and barely more than a week after CSC confirmed that it was prepared to sign an agreement with Dorchester County, to have the subdivision map recorded, and to then proceed forward with closing. ECF No. 24, Am. Countercl. ¶ 40; ECF No. 24 at 5–6, First Aff. Def. Such conduct by TRB was not in good faith, impaired CSC's right to receive the benefits of the PSA, and otherwise prejudiced CSC by taking away CSC's only feasible means for accessing CSC's Property and completing construction of CSC's concrete plant.
>
> . . .
>
> CSC had been using Mellichamp Road to access CSC's Property and to construct its concrete plant with TRB's knowledge for approximately **five months** prior to December 12, 2019. See ECF No. 24, Am. Countercl. ¶¶ 14–16, 26–27. However, Banks/TRB did not close and lock the gate across Mellichamp Road until **the day after** CSC notified Banks/TRB that CSC was prepared to move forward with the transaction. ECF No. 24, Am. Countercl. ¶¶ 25–27. Any suggestion that TRB was authorized or required to close the gate is not supported by the parties' allegations contained in the pleadings in the light most favor to CSC, the nonmoving party.

(Dkt. No. 39 at 13-14). As the non-moving party, the Court assumes the truth of Concrete's well-pled factual allegations and, as Concrete's Amended Answer generally "raise issues of fact that, if proved, could possibly defeat [Plaintiff's claim]," *Walker v. Liberty Mut. Ins. Co.*, No. 4:16-cv-1388-RBH, 2017 WL 1020884, at *2 (D.S.C. 2017) (denying plaintiff's motion for judgment on the pleadings where defendant had raised various affirmative defenses), the Court finds that Plaintiff is not entitled to judgment on the pleadings, *see In re MI Windows & Doors, Inc. Prod. Liab. Litig.*, No. 2:12-CV-01297-DCN, 2013 WL 427345, at *1 (D.S.C. Feb. 4, 2013) ("Courts follow 'a fairly restrictive standard' in ruling on Rule 12(c) motions, as 'hasty or imprudent use of this summary procedure by the courts violates the policy in favor of ensuring to each litigant a full and fair hearing on the merits of his or her claim or defense.'") (quoting Wright & Miller, *supra*,

§ 1368). *See also Waites v. Wells Fargo Bank*, N.A., No. 2:15cv353, 2016 U.S. Dist. LEXIS 19362, at *2 (E.D. Va. Feb. 16, 2016) (noting it is "generally not appropriate to consider the viability of affirmative defenses at the Rule [12(c) or] 12(b)(6) stage"); *Gen. Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989) (noting that "if the defendant raises an affirmative defense in his answer it will usually bar judgment on the pleadings"); Wright & Miller, *supra*, § 1368 & n. 28 (noting that "[i]f the affirmative defense clearly is established in the pleadings, as, for example, when a statute of limitations defense is apparent on the face of the complaint and no question of fact exists, then a judgment on the pleadings may be appropriate").

**IV.    Conclusion**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 36) is **DENIED**.

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

August 11, 2021
Charleston, South Carolina