**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| TRB Mellichamp LLC, ) | |
| ) | |
| Plaintiff, ) | Civil Action No.: 2:20-4413-RMG |
| ) | |
| v. ) | |
| ) | **ORDER AND OPINION** |
| Concrete Supply Co., LLC, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Before the Court is Plaintiff's motion for summary judgment (Dkt. No. 46). For the reasons set forth below, the motion is denied.

**I.	Background[1]**

This is a diversity jurisdiction breach of contract case arising from a purchase agreement for real property in Dorchester County, South Carolina. Plaintiff is an affiliate of non-party Banks Construction Company ("Banks"), a highway contractor. Plaintiff alleges that Banks and Defendant Concrete Supply Co., LLC ("Concrete") own adjacent properties. Concrete provides ready-mixed concrete products and services to consumers throughout the Carolinas.

On March 18, 2019, Banks and Concrete entered into a purchase and sale agreement (the "PSA") under which Concrete agreed to sell Banks a portion of its property (the "Sale Property") and retain the residual portion (the "Residual Property"). (Dkt. No. 46-1 at 2). Under the PSA, Banks would obtain the necessary permits and authorizations for the construction of a road (the

---

[1] The Court views all facts in a light most favorable to Defendant, the nonmoving party.

"Connecting Road") connecting the Residual Property with a portion of Mellichamp Road (the access road) on adjacent property owned by Norfolk Southern and leased to Banks. (*Id.* ¶¶ 1, 28). Banks would negotiate with Norfolk Southern, as part of its lease, for Concrete to formally access the Connecting Road. (*Id.* ¶ 28). Concrete, for its part, was required to subdivide its property prior to closing. (*Id.* ¶ 27).

Under the PSA, the closing of the real estate transaction "shall" occur within thirty days of (1) Concrete's providing proof that its property has been subdivided into the Sale Property and Residual Property, and (2) Banks providing proof that (i) its lease with Norfolk Southern has been amended to grant Concrete access and use of Norfolk Southern's property, and (ii) it has obtained the necessary permits and approvals for the construction of the Connecting Road. (*Id.* ¶ 3(b)). The PSA is governed by South Carolina law. (*Id.* ¶ 22).

On June 18, 2019, Banks, Concrete and Plaintiff executed an amendment to the PSA, which assigned all of Banks's rights under it to Plaintiff. The amendment provides that Banks/Plaintiff had obtained the road construction permits, that the parties had reached an agreement on the terms of a sublease for Concrete's access and use of Norfolk Southern's property, and that the sublease would be executed at the closing. (Dkt. No. 46-2).

Around August 2019, the parties learned that Dorchester County would not permit Concrete to subdivide its property unless Concrete agreed that it would not attempt to access the Residual Property through an adjacent residential neighborhood. *See* (Dkt. No. 50 at 8) ("[Concrete]'s hesitance to subdivide the property on the terms called for by Dorchester County was neither unreasonable nor unjustified. In fact, Dorchester County had approved construction of [Concrete's] concrete plant with Mellichamp Road as the access."); *see also* (Dkt. No. 46 at 7); G.

Reid Banks Deposition, (Dkt. No. 50-5 at 67-68) (testifying that Dorchester County had originally "granted [Concrete] a building permit" but that "[n]ow they were going to deny the connecting road as their legal access without this restricted access agreement" and "Dorchester County was not . . . necessarily disagreeing that they should not have provided . . . the building permit, but they were not, in their minds, going to do something else that was incorrect"). Though the PSA does not permit Concrete to refuse to subdivide under such conditions, Plaintiff voluntarily began to negotiate alternative transactions with Concrete. (Dkt. No. 46 at 7); (Dkt. No. 50 at 9-10) (noting Concrete worked "diligently toward an alternative structure" and that, prior to December 11, 2019, "three different structures—the PSA and two alternatives—were on the table"). Between this moment and about December 12, 2019, Concrete continued to use Mellichamp Road to access its property and perform work at its concrete plant. *See* Kevin Garrick Deposition, (Dkt. No. 50-4 at 13); (Dkt. No. 50 at 4) (noting, undisputedly, that "neither Norfolk Southern nor Banks ***ever*** objected to [Concrete] using Mellichamp Road to access [Concrete's] property" and that Concrete used Mellichamp Road "for a number of months prior to December 11, 2019, to construct its concrete plant with Banks Construction's knowledge and consent"); *see also* (*id.*) (noting, undisputedly, that at the time Concrete bought its property, it believed "Mellichamp Road was a state road that provided access to its property" but that, in-fact, Mellichamp Road was within Norfolk Southern's right of way).

On December 11, 2019, Concrete informed Plaintiff that it wished to proceed with the PSA as written. (Dkt. No. 50 at 11); (Dkt. No. 51 at 8). Concrete acknowledged that although this would cause "a time delay, [] it was what [the parties] agreed to." (Dkt. No. 46-11). In response, Plaintiff proposed the parties "move forward with" one of the alternative proposals, namely "the

long-term lease structure and permit [Concrete], once the subdivision was approved, to terminate the lease and require [Plaintiff] to convey the Residual Property to [Concrete]." (Dkt. No. 51 at 8). Concrete rejected this proposal. (Dkt. No. 46-10).

On or around December 12, 2019, Plaintiff closed the gate to Mellichamp Road. *See* (Dkt. No. 46 at 7) (arguing Plaintiff closed the gate because Concrete's continued informal use of Mellichamp Road "jeopardized" Plaintiff's lease with Norfolk Southern). While Concrete had requested that Plaintiff allow it to complete certain construction work at its plant before Plaintiff took this action, Plaintiff refused. (Dkt. No. 50 at 23). "Because that request was refused, [Concrete] was unable to pour concrete into the wash pits. As a result of rain the next day, the hole filled up with water. Nothing could be done to salvage the work . . . and [Concrete] would be required to start completely over[.]" (*Id.*). Concrete allegedly "lost approximately $56,000 as a result of the need to start over on this work." (*Id.*) ("[Concrete] also incurred approximately $28,500 in costs related to installing a road through an adjacent neighborhood as a result of the need to establish alternate access . . . [and] has been delayed in opening its plant and generating revenue."); (*Id.* at 22) (arguing the closing of Mellichamp Road was retaliation for Concrete refusing to "do[] a deal better than what" the PSA called for) (emphasis removed). To date, Concrete has not subdivided its property. (Dkt. No. 46-4 at 15).

On September 30, 2021, Dorchester County informed Plaintiff that it no longer required an access agreement from Concrete to subdivide the property as Plaintiff had acquired other adjacent property, allowing the County to "subdivide the property through a property line adjustment." *See* (Dkt. No. 46 at 9) (concluding that "there is no impediment to closing the real estate transaction

immediately, apart from [Concrete]'s refusal."); (Dkt. No. 46-18 at 2) (email with Dorchester County to this effect).

Plaintiff initiated this lawsuit on December 21, 2020 seeking specific performance of the PSA. (Dkt. No. 1).

On March 22, 2021, Concrete filed its amended answer, affirmative defenses, and counterclaim. (Dkt. No. 24). Concrete raises therein the defense of "unclean hands." (*Id.* at 5-6).

On June 11, 2021, the Court dismissed Concrete's amended counterclaim for breach of contract. (Dkt. No. 34).

On August 11, 2021, the Court denied Plaintiff's motion for judgment on the pleadings. (Dkt. No. 42).

On October 29, 2021, Plaintiff moved for summary judgment, seeking specific performance under the PSA. (Dkt. Nos. 46, 51). Concrete opposes. (Dkt. No. 50).

Plaintiff's motion is fully briefed and ripe for disposition.

## II.     Legal Standard

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court interprets all inferences and ambiguities against the movant and in favor of the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Where the moving party has met its burden, the non-moving party must come forth with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Rule 56(e)); *Lilly v. Crum,* No. 2:19-CV-00189, 2020 WL 1879469, at *4 (S.D.W. Va. Apr. 15, 2020) (noting that the "mere existence of a scintilla of evidence in support

of the plaintiff's position will be insufficient" to create a genuine dispute) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

### III. Discussion

In its motion, Plaintiff argues that all conditions of the PSA have been satisfied and that it is entitled to specific performance of the PSA. In opposition, Concrete raises various arguments for why summary judgment is inappropriate, contending, in pertinent part, that a question of material facts exists as to whether Plaintiff acted inequitably in closing Mellichamp Road.

Generally speaking, "[s]pecific performance should be granted only if there is no adequate remedy at law and specific enforcement of the contract is equitable between the parties." *Ingram v. Kasey's Assocs.,* 340 S.C. 98, 105, 531 S.E.2d 287, 291 (2000). For specific performance to be an appropriate remedy, a court of equity must find the following: (1) there is clear evidence of a valid agreement; (2) the agreement had been partly carried into execution on one side with the approbation of the other; and (3) the party who comes to compel performance has performed his or her part, or has been and remains able and willing to perform his or her part of the contract. *Id.*; *Shay v. Austin*, 466 F. Supp. 2d 664, 668 (D.S.C. 2006). Although a decree of specific performance rests with the discretion of the court, this discretion is "to be exercised in accordance with the special rules and practices of equity, and with regard to the facts and circumstances of the particular case." *Shay*, 466 F. Supp. 2d. at 668 (citing *Humble Oil & Refining Co. v. DeLoache,* 297 F. Supp. 647, 651 (D.S.C.1969)). Indeed, "[w]here the agreement, be it an option lease or contract of sale, is unobjectionable and is regular and valid, it, as the Court remarked in *Sims v. Nidiffer,* [127 S.E.2d 85 (Va. 1962)], 'is much a matter of course for a court of equity to decree specific

performance of it as it is for a court of law to award damages for its breach.'" *Humble Oil & Refining Co.*, 297 F. Supp. at 651.

The doctrine of unclean hands "precludes a plaintiff from recovering in equity if he acted unfairly in a matter that is the subject of the litigation to the prejudice of the defendant." *Ingram v. Kasey's Assocs.*, 340 S.C. 98, 107 n.2, 531 S.E.2d 287, 292 n.2 (2000).

After careful consideration of the parties' respective briefing, the Court denies Plaintiff's motion for summary judgment because, at a minimum, a question of material fact exists as to Concrete's affirmative defense of unclean hands.[2]  When Dorchester County indicated that it would not allow Concrete to subdivide its property without restricting Concrete's access to its property through an adjacent residential neighborhood, the PSA did not require Plaintiff to work with Concrete to develop alternatives to the PSA.  Nevertheless, Plaintiff choose to do so, permitting Defendant to use Mellichamp Road to construct its concrete plant during the parties' negotiations. (Dkt. No. 51 at 8) (admitting as much).  Then, after Concrete indicated to Plaintiff that it desired to proceed under the PSA—a choice which it appears, viewing all facts in in a light most favorable to it, Concrete was permitted—Plaintiff closed the gate to Mellichamp Road, an action which a reasonable factfinder could find was in retaliation for Concrete refusing to sign an alternative deal. *See* (Dkt. No. 50 at 23) (describing monetary damages incurred by Concrete). Plaintiff argues that Concrete's changing course and requesting to proceed under the PSA instead

---

[2] In its opposition, Concrete presents other arguments for why Plaintiff's motion must be denied. (Dkt. No. 50 at 17-19) (arguing that because the Connecting Road is unpaved, the Connecting Road is not "complete" as required by the PSA and further arguing that because Concrete has not "defaulted" as per the PSA, Plaintiff inappropriate seeks specific performance).  At this time, the Court takes no view on these arguments, and assumes without finding that all conditions required of Plaintiff under the PSA for closing have been met.

of an alternative arrangement, after several months of negotiation, justified its "lo[sing] trust" in Concrete such that Plaintiff had the right to close the gate to Mellichamp Road. *See* (Dkt. No. 51 at 9) ("[Plaintiff] reasonably believed . . . that [Concrete] intended to continue using the access road without ever closing the real estate transaction and without formal permission from Norfolk Southern while it constructed and then operated its concrete plant on the Residual Property.").[3] Given Plaintiff voluntarily engaged in negotiations with Concrete to find an alternative to the PSA, however, the reasonableness of Plaintiff's actions is a determination for a factfinder only and cannot be decided on summary judgment.

## IV.     Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment (Dkt. No. 46) is **DENIED**.

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel  
Richard Mark Gergel  
United States District Judge

January 13, 2022  
Charleston, South Carolina

---

[3] While Plaintiff argues in its briefing that it "closed the gate . . . because it could not afford to put Banks Construction's lease with Norfolk Southern in jeopardy," *see, e.g.*, (Dkt. No. 51 at 10), Plaintiff never articulates *why* or *how* Concrete's use of Mellichamp Road jeopardized Bank's relationship with Norfolk Southern—especially given Concrete undisputedly used the road until around December 12, 2019.